UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GARY A. PULVER dba PULVER CONSTRUCTION COMPANY,<br><br>Plaintiff, Counter-Defendant, Third-Party Plaintiff,<br><br>v.<br><br>BARRY KANE, *et al.*,<br><br>Defendants. | Case No. 3:20-cv-00673-MMD-CSD<br><br>ORDER |
| AND ALL RELATED ACTIONS | |

## I. SUMMARY

This action arises from the construction of a private residence in Incline Village, Nevada. Plaintiff, Counter-Defendant, and Third-Party Plaintiff Gary A. Pulver, doing business as Pulver Construction Company ("Pulver"), alleges that, if the residence is defectively constructed, Third-Party Defendants, including design professionals, A&E Architects, P.C. ("A&E") and Reno Tahoe Geo Associates, Inc. ("RTGA") (collectively, "Design Defendants"), are responsible for such defects. (ECF No. 40 at 4-5.) Before the Court are A&E's motion to dismiss all of Pulver's claims against it (ECF No. 58) and RTGA's motion to dismiss all but one of Pulver's claims against it (ECF No. 65) (collectively, "Motions").[1] As further explained below, because the Court finds that Pulver's claims fail as a matter of law, the Court grants both Motions.

---

[1] Pulver filed responses (ECF Nos. 63, 68), and A&E and RTGA filed replies (ECF Nos. 64, 71). A&E additionally joined RTGA's motion to dismiss. (ECF No. 70.)

## II. BACKGROUND

The Court adapts the following allegations from Pulver's amended third-party complaint (ECF No. 40) and original complaint (ECF No. 1). Pulver is a licensed contractor. (ECF No. 40 at 2.) Lakeshore LLC, comprised of Barry and Anna Kane, contracted with Pulver to construct a residence located at 1059 Lakeshore Boulevard, Incline Village, Nevada ("Subject Property"). (ECF No. 1 at 2.) Pulver filed suit against the Kanes and Lakeshore LLC for alleged failure to pay all of its "incurred costs plus overhead and profit," and Lakeshore LLC counterclaimed against Pulver for alleged construction defects. (*Id.* at 2-7; ECF No. 10 at 23-31.) Pulver then filed this third-party action against Third-Party Defendants, including Design Defendants, alleging that they "failed to perform their contracted work as required by contract, fell below the applicable standard of care in performing their work, failed to perform their work in a workmanlike manner, and acted negligently." (ECF No. 40 at 4.)

As pertinent to the Motions, Pulver alleges the following. A&E is a licensed or accredited architect, and RTGA is a licensed or accredited geotechnical engineer. (*Id.* at 3.) Third-Party Defendants owed Pulver and/or the Kanes and/or Lakeshore LLC "a contractual and/or legal duty to exercise due and reasonable care in performing work on the Subject Property." (*Id.* at 5.) If the Subject Property is defectively constructed, "Third-Party Defendants are responsible for such defects in that [they] failed to act reasonably and according to the applicable standard of care" and their "acts or omissions" are "the direct and proximate cause of any and all damages incurred by Lakeshore LLC such that any and all damages assessed against [Pulver] must be in turn assessed against Third-Party Defendants." (*Id.*)

Pulver further alleges that it "entered into oral and/or written agreements with Third-Party Defendants (except for A&E Architects) for [them] to perform construction work at portions of the Subject Property." (*Id.*) "By virtue of the contractual relationship" between Pulver and Third-Party Defendants, except for A&E, "a special relationship exists upon which an implied indemnity claim may attach." (*Id.* at 6.) If Lakeshore LLC recovers

against Pulver, then Pulver is "entitled to implied contractual indemnity" from Third-Party Defendants for injuries and damages sustained by Lakeshore LLC. (*Id.*)

Pulver also alleges that "Third-Party Defendants impliedly warranted that all work performed . . . would be performed in a first class and workmanlike manner" and that they "breached their warranties resulting in the defective work and damages described in the Counterclaim." (*Id.* at 7.) If a judgment is rendered against Pulver in favor of Lakeshore LLC, Pulver is "entitled to contribution from Third-Party Defendants in an amount proportionate to the amount of negligence and/or fault attributable" to them. (*Id.* at 8.) Lastly, Pulver alleges that it has attached attorney affidavits, required under Nevada Revised Statutes § 40.6884, "establishing the required elements of merit" of the claims against A&E and RTGA. (*Id.* at 9.)

Pulver asserts six claims for relief: (1) negligence; (2) breach of contract; (3) implied indemnity; (4) breach of implied warranties; (5) contribution; and (6) under NRS Chapter 40. (*Id.* at 5-10.) Against both A&E and RTGA, Pulver asserts claims of negligence, breach of implied warranties, contribution, and under NRS Chapter 40. (*Id.*) Pulver asserts an additional two claims against RTGA: breach of contract and implied indemnity. (*Id.* at 5-7.)

### III. DISCUSSION

A&E moves to dismiss all four of Pulver's claims against it, and RTGA moves to dismiss all but Pulver's breach of contract claim against it.[2] (ECF Nos. 58, 65.) The Court first addresses whether NRS Chapter 40 and its notice requirements apply, then addresses Design Defendants' Motions as to each challenged claim. Because Design

---

[2]Pulver argues that RTGA's 12(b)(6) motion is untimely because it has already filed its answer. (ECF No. 68 at 5.) However, the Ninth Circuit instructs that, where "[d]efendants filed their motion to dismiss *after* filing their answer," courts should treat the motion "as a motion for judgment on the pleadings, pursuant to Rule 12(c) or 12(h)(2)." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980)); *see also Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule.") (citation and internal quotation marks omitted). The Court therefore considers RTGA's motion as a motion for judgment on the pleadings.

3

Defendants largely make the same arguments for dismissal of the overlapping claims, the Court addresses those arguments together where appropriate.

### A. Applicability of NRS Chapter 40

As an initial matter, Pulver and Design Defendants do not appear to dispute that NRS Chapter 40 is applicable here. But A&E in its reply "respectfully requests the Court either find NRS Chapter 40 does not apply at all under the circumstances found in this matter, or that Pulver must comply with the notice requirements of NRS Chapter 40." (ECF No. 64 at 5.) The Court therefore briefly addresses whether NRS Chapter 40 applies to Pulver's third-party claims.

NRS Chapter 40 governs, in relevant part, actions resulting from constructional defects in residences. *See* NRS §§ 40.600-40.695. "Constructional defect" is defined as:

> a defect in the design, construction, manufacture, repair or landscaping of a new residence . . . and includes, without limitation, the design construction, manufacture, repair or landscaping of a new residence . . .
>
> (1) which presents an unreasonable risk of injury to a person or property; or
> (2) which is not completed in a good and workmanlike manner and proximately causes physical damage to the residence, an appurtenance or the real property to which the residence or appurtenance is affixed.

NRS § 40.615. "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted). Here, it is undisputed that Pulver's claims against Design Defendants arise from alleged constructional defects of a new residence regarding its design. (ECF No. 40.) The Court therefore finds that, by its plain language, NRS Chapter 40 governs Pulver's claims.

### B. NRS Chapter 40 Notice Requirements

Having found that NRS Chapter 40 is applicable, the Court addresses A&E's argument that Pulver failed to comply with the notice requirements of NRS Chapter 40. (ECF No. 58 at 5-6.) A&E specifically argues that Pulver failed to provide A&E notice of

4

construction defects under NRS § 40.646 before commencing litigation, and therefore Pulver's claims are barred. (*Id.*) Pulver counters that the express language of NRS § 40.646, read with NRS § 40.645, does not require Pulver to provide A&E notice of Lakeshore LLC's Chapter 40 claim.[3] (ECF No. 63 at 6-8.) The Court agrees with Pulver as further explained below.

NRS § 40.645(1)(a) requires that before a claimant, typically defined as "an owner of a residence" under NRS § 40.610, "commences an action . . . for a constructional defect against a contractor, subcontractor, supplier, or design professional, the claimant . . . [m]ust give written notice . . . to the contractor." NRS § 40.645(4)(a) provides an exception for the notice requirement "if . . . the contractor, subcontractor, supplier or design professional has filed an action against the claimant." NRS § 40.646 then requires that "not later than 30 days after . . . a contractor receives notice of a constructional defect pursuant to NRS 40.645, the contractor shall forward a copy of the notice" to "each subcontractor, supplier or design professional whom the contractor reasonably believes is responsible for a defect specified in the notice."

Read on its own, NRS § 40.646 plainly states that a contractor must forward a copy of the Chapter 40 notice to potentially liable subcontractors and supplier or design professionals only where the contractor first receives Chapter 40 notice of a constructional defect. *See* NRS § 40.646. Such is not the case here, where Pulver, the contractor, did not receive a Chapter 40 notice from Lakeshore LLC or the Kanes, the property owners and would-be Chapter 40 claimants, because Pulver first filed suit against them, not vice versa. (ECF No. 1 at 1-2.) Pulver was therefore not required to forward a nonexistent copy of the Chapter 40 notice to Design Defendants.

---

[3]Pulver also argues that A&E has had actual notice of the constructional defects alleged by Lakeshore LLC because of Lakeshore LLC's prior lawsuit against A&E, Case No. 3:21-cv-00097, and therefore "any contention that A&E has not been afforded adequate notice of the Chapter 40 claims against it is disingenuous." (ECF No. 63 at 6-8.) Because the Court finds that Pulver has not failed to comply with the notice requirements of NRS Chapter 40, the Court need not—and does not—address Pulver's actual notice argument and A&E's corresponding counterarguments. (*Id.*; ECF No. 64 at 3-4.)

And as Pulver suggests, NRS § 40.646, by its plain language, should be read together with NRS § 40.645. *See* NRS § 40.646. It therefore logically flows that, if a claimant is not required to provide NRS Chapter 40 notice to a contractor in instances where the contractor has filed an action against the claimant, then there is no copy of the Chapter 40 notice that the contractor can—nor must—forward to any potentially liable subcontractors or design professionals. *See id.* § 40.645-40.646. Here, it is undisputed that Lakeshore LLC and the Kanes are the owners of the Subject Property and therefore claimants under NRS Chapter 40; Pulver was their contractor; and Pulver filed an action against them before this third-party action. (ECF No. 1 at 1-2.) The exception in NRS § 40.645(4)(a) to the notice requirement therefore applies and logically extends to Pulver in relation to any potentially liable subcontractors or design professionals, such as Design Defendants. See NRS § 40.645(4)(a).

Moreover, the Court finds A&E's reliance on *Barrett v. Eighth Jud. Dist. Ct.*, 331 P.3d 892 (Nev. 2014), unpersuasive. (ECF No. 58 at 5-6.) A&E cites to *Barrett* for the proposition that "NRS 40.690 allows a contractor to be treated as a claimant for purposes of requiring another party to appear and participate in the NRS Chapter 40 proceedings after that party receives notice of the proceedings from the contractor or claimant," but A&E does not elaborate any further why that supports its position. (*Id.*) This citation is further irrelevant here because, as the *Barrett* court stated, "NRS 40.690 governs [pre-litigation] NRS Chapter 40 proceedings, such as mediation under NRS 40.680, *not the district court proceedings*, and it requires notice of those NRS Chapter 40 proceedings, not of construction defects." 331 P.3d at 895 (emphasis added).

The Court also finds unpersuasive A&E's argument that a finding that Pulver does not need to provide A&E an NRS Chapter 40 notice would render all other NRS Chapter 40 notice provisions inapplicable. (ECF No. 64 at 4-5.) As already discussed, NRS § 40.645(4)(a) and NRS § 40.646 clearly carve out an exception that logically extends to cover Pulver's circumstances here. *See* NRS § 40.645-40.646. The Court's finding merely

enforces the plain language of the statute and does not, as A&E argues, "render a majority of the statute unenforceable." (ECF No. 64 at 4-5.)

In sum, the Court finds that the notice requirements of NRS Chapter 40 do not bar Pulver's claims against Design Defendants. The Court moves on to address the merits of each of the disputed claims.

### C. Negligence Claim

Pulver asserts a negligence cause of action against both A&E and RTGA. (ECF No. 40 at 5.) Design Defendants generally argue that the economic loss doctrine under Nevada law bars Pulver's negligence claim and no exceptions apply, while Pulver counters that the economic loss doctrine does not preclude tort-based claims in a *residential* constructional defect action brought by a contractor under NRS Chapter 40. (ECF No. 58 at 6-13; ECF No. 65 at 7-17; ECF No. 63 at 9-11; ECF No. 68 at 5-10.) The Court agrees with Design Defendants.

As an initial matter, Pulver and Design Defendants all agree that Nevada law recognizes the economic loss doctrine. (ECF No. 58 at 6; ECF No. 65 at 7; ECF No. 63 at 9.) "Under the economic loss doctrine 'there can be no recovery in tort for purely economic losses.'" *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (internal citation omitted), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31, 31-33 (Nev. 2004). In *Calloway*, the Nevada Supreme Court concluded that the economic loss doctrine applied to constructional defect cases. *See id.* at 1266. Therefore, in constructional defect cases, "economic losses are not recoverable in negligence absent personal injury or damage to property other than the defective entity itself." *Id.* at 1267 (citations omitted).

Design Defendants argue that the *Calloway* holding squarely bars Pulver's negligence claim; point to *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81 (Nev. 2009) to support that position; and contend that the homeowner exception carved out in *Olson* does not apply to Pulver. (ECF No. 58 at 6-13; ECF No. 65 at 7-15.) Pulver counters that, under *Calloway* and *Terracon*, the economic loss doctrine applies

7

to design professionals in constructional defect cases relating to *commercial* construction projects, but not those relating to *residential* construction projects. (ECF No. 63 at 9-11; ECF No. 68 at 5-10.) Pulver also argues that the *Olson* exception applies to contractors, like Pulver, who are acting as NRS Chapter 40 claimants in residential constructional defect actions. (ECF No. 63 at 9-10; ECF No. 68 at 5-7.)

In *Olson*, the Nevada Supreme Court carved out a homeowner exception to *Calloway*, holding that "a negligence claim can be alleged in a construction defects cause of action initiated under Chapter 40." 89 P.3d at 33. Notably, *Calloway* and *Olson* involved homeowners suing contractors and subcontractors who were directly involved with the alleged defective residential construction. *See* 993 P.2d at 1261-62; 89 P.3d at 32. In *Terracon*, the Nevada Supreme Court extended the *Calloway* holding beyond claims against contractors and subcontractors, holding that the economic loss doctrine also bars tort-based claims for purely economic losses against design professionals, such as architects and engineers, in *commercial* constructional defect cases. *See* 206 P.3d at 90. The *Terracon* court made clear that its decision "in no way implicate[d] NRS Chapter 40, as the property at issue [there] was not residential." *Id.* at 90 n.9.

The Nevada Supreme Court therefore left open the question of whether the economic loss doctrine bars tort-based claims for purely economic losses against design professionals in *residential* constructional defect cases under NRS Chapter 40, the question at issue here. "When a federal court interprets state law, it is bound by the decisions of the state's highest court." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (internal citation, brackets, and quotation marks omitted). "If the state's highest appellate court has not decided the question presented, then [a federal court] must predict how the state's highest court would decide the question." *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).

The Court predicts that the Nevada Supreme Court would decide that the economic loss doctrine also applies to design professionals in residential constructional defect cases under NRS Chapter 40 and that the *Olson* exception could similarly apply in

such cases. Even though the Nevada Supreme Court expressly limited its holding in *Terracon* to the commercial construction context, it would be most consistent with existing Nevada case law to find that the economic loss doctrine also bars claims against design professionals in a residential context. *See* 206 P.3d at 89, 90 n.9. In *Terracon*, the Nevada Supreme Court stated that it "perceive[d] no significant policy distinction that would drive [it] to permit tort-based claims to recover economic losses against design professionals . . . who provided their professional services in the commercial property development and improvement process," when it has concluded that "such claims are barred under the economic loss doctrine if brought against contractors and subcontractors involved in physically constructing improvements to real property." *Id.* at 89. There is logically even less of a policy distinction and therefore similarly no significant policy distinction that would permit negligence claims for purely economic losses against design professionals in the residential construction context but not for contractors and subcontractors in the same context.

Moreover, any significant policy distinctions that would warrant treating differently design professionals in commercial settings and design professionals in residential settings are already taken into account by the *Olson* exception. The Court agrees with Design Defendants that the *Olson* exception only applies to homeowners bringing construction defect cases under NRS Chapter 40, not contractors such as Pulver.[4] (ECF No. 58 at 11-13; ECF No. 65 at 9-11.) *Olson* involved a suit by homeowners, and the *Olson* court specifically contemplated carving out an exception for homeowners, finding that "it is reasonable to infer that the Legislature did not intend for the economic loss

---

[4]The Court finds unpersuasive Pulver's arguments to the contrary. Pulver relies on out-of-context citations to the *Olson* decision and on NRS § 40.690 to argue that it may be considered a Chapter 40 claimant and covered under the *Olson* exception. (ECF No. 63 at 9-10; ECF No. 68 at 5-7.) As already discussed, NRS § 40.690 only allows a contractor to be treated as a claimant for purposes of pre-litigation NRS Chapter 40 proceedings, such as mediation under NRS § 40.680, not court proceedings. *See Barrett*, 331 P.3d at 895. In any case, the *Olson* exception is intended to protect and apply to NRS Chapter 40 homeowner claimants, not sophisticated parties such as contractors. *See Olson*, 89 P.3d at 33; *see also Westpark Owners' Ass'n v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 167 P.3d 421, 428 (Nev. 2007).

doctrine to preclude a *homeowner* from alleging a negligence claim in a construction defects cause of action initiated pursuant to Chapter 40." 89 P.3d at 33 (emphasis added). A finding that the *Olson* exception also applies to allow homeowners to recover economic losses against design professionals in residential construction defect actions would therefore be consistent with Nevada case law and effectuate the policy undergirding NRS Chapter 40 of protecting unsophisticated homeowners. *See Westpark Owners' Ass'n v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 167 P.3d 421, 428 (Nev. 2007) *(*"[T]he legislative history of NRS Chapter 40 indicates that a primary legislative purpose of enacting the statutory scheme was to protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations.").

The Court accordingly predicts that the Nevada Supreme Court would decide here that the economic loss doctrine bars tort-based claims for purely economic losses against Design Defendants and that the *Olson* exception to the doctrine does not apply to contractors such as Pulver. Here, Pulver asserts what amounts to a professional negligence claim against Design Defendants in a residential context, without claiming injury to any property beyond the allegedly defectively constructed Subject Property. (ECF No. 40 at 5.) Pulver alleges only that, "if the Subject Property is defectively constructed," Design Defendants "are responsible for such defects" and their "acts or omissions . . . are the direct and proximate cause of any and all damages." (*Id.*) Because it is undisputed that Pulver does not allege damage to property "other than the defective entity itself" and is not a homeowner falling under the *Olson* exception, Pulver fails to state a claim upon which relief can be granted. *See Calloway*, 993 P.2d at 1267; Fed. R. Civ. P. 12(b)(6). The Court therefore dismisses Pulver's negligence claims against A&E and RTGA as barred by the economic loss doctrine.[5]

---

[5]Having found that the economic loss doctrine bars Pulver's negligence claim against Design Defendants and that no exceptions apply, the Court need not—and does not—address A&E's arguments that it did not owe a tort-based duty to Pulver and Pulver's arguments in response. (ECF No. 58 at 14-15; ECF No. 63 at 11-12.)

### D.     Implied Indemnity and Contribution Claims

Related to its negligence claim, Pulver asserts an implied indemnity claim against RTGA and contribution claims against both A&E and RTGA. (ECF No. 40 at 6-8.) Design Defendants argue that, because implied indemnity and contribution are tort-based claims, those claims are also barred by the economic loss doctrine under Nevada law. (ECF No. 65 at 7.) Pulver generally raises the same counterarguments it raised as to its negligence claim and does not dispute that its implied indemnity and contribution claims are tort-based. (ECF No. 68 at 10).

The Court agrees with Design Defendants that Pulver's implied indemnity (or equitable indemnity) and contribution claims sound in tort and are based on Pulver's negligence claim. *See The Doctors Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004) ("The remedies of contribution and implied, *i.e.*, noncontractual indemnity allow parties extinguishing tort liabilities by way of settlement or payment of judgments to seek recovery from other potential tortfeasors under equitable principles."). Pulver's implied indemnity claim arises from its contractual relationship with RTGA but is ultimately based on RTGA's allegedly negligent "conduct . . . in constructing the portions of the Subject Property which are allegedly defective," not on an alleged breach of contract. (ECF No. 40 at 6.) And Pulver's contribution claim is similarly based on "the amount of negligence and/or fault attributable to [Design Defendants]." (*Id.* at 8.) Because Pulver's negligence claim is barred by the economic loss doctrine, as already discussed, Pulver has not alleged a valid underlying tort claim to support its implied indemnity and contribution claims. *See Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1154 n.4 (Nev. 2013) (finding that equitable claims for contribution and indemnity "necessarily fail" after determining that the economic loss doctrine barred negligence claims). The Court therefore dismisses Pulver's implied indemnity claim against RTGA and its contribution claims against A&E and RTGA.[6]

---

[6]Having found that Pulver's contribution claim is facially barred by the economic loss doctrine, the Court need not—and does not—address RTGA and Pulver's arguments

### E.     Breach of Implied Warranties Claim

Pulver also asserts a breach of implied warranties claim against both A&E and RTGA. (ECF No. 40 at 7.) Design Defendants argue that Pulver's breach of implied warranties claim must be dismissed because, as California and the majority of jurisdictions hold, design professionals do not warrant their services and therefore cannot be held liable under claims of implied warranty. (ECF No. 65 at 18-19.) Pulver counters that the Nevada Supreme Court has recognized that the implied warranty of workmanship accompanies every contract and would embrace the minority view holding that implied warranties do apply to design professionals. (ECF No. 68 at 12-14.)

To the extent that Pulver is alleging that Design Defendants breached an implied warranty of workmanship, that claim fails because the sparse case law that exists to support the recognition of an implied warranty of workmanship under Nevada law involves contractors and subcontractors and has not been extended to design professionals. *See KB Home Nevada Inc. v. Dunrite Constr., Inc.*, 402 P.3d 1253 (Nev. 2017), 2017 WL 4351376 (unpublished disposition); *Robert Dillon Framing, Inc. v. Canyon Villas Apartment Corp.*, 129 Nev. 1102 (2013), 2013 WL 3984885 (unpublished disposition). In any case, the implied warranty of workmanship has historically applied to builders and contractors in American jurisprudence. *See* 3 Philip Lane Bruner & Patrick J. O'Connor, *Bruner & O'Connor on Construction Law* § 9:77 n.2 (2022) (collecting cases). Moreover, "a claim for breach of the implied warranty of workmanship requires privity of contract." *KB Home*, 402 P.3d at 1253. Therefore, as to A&E, such a claim also fails because Pulver itself admits that it did not contract with A&E and does not allege any privity of contract with A&E in its pleadings. (ECF No. 40 at 5-6.)

Design Defendants correctly point out that Nevada law is silent on the issue of whether design professionals can be held liable under claims of implied warranty and point to California law to support their position. (ECF No. 65 at 18-19.) Nevada courts

---

on the ripeness of Pulver's contribution claim. (ECF No. 65 at 17-18; EFC No. 68 at 10-12.)

12

often look to California law where Nevada law is silent. *See Commercial Standard Ins. Co. v. Tab Constr., Inc.*, 583 P.2d 449, 451 (Nev. 1978); *see also Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996) ("Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance."). The majority of jurisdictions that have addressed this issue, including California, have rejected the application of implied warranties to the services of design professionals. *See* 5 *Bruner & O'Connor on Construction Law* § 17:24 nn.16-18 (collecting cases). "[T]he well settled rule in California is that where the primary objective of a transaction is to obtain services, the doctrines of implied warranty and strict liability do not apply." *Allied Properties v. John A. Blume & Assocs.*, 25 Cal. App. 3d 848, 855 (Ct. App. 1972). Stated differently, "those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct." *Id.* at 856 (internal citation and quotation marks omitted). The rationale is that "[t]hose who hire [experts for their services] are not justified in expecting infallibility, but can expect only reasonable care and competence." *Id.*

The Court finds unpersuasive Pulver's argument that the Nevada Supreme Court's citation to *Williston on Contracts* on the implied warranty of good workmanship in *KB Home* and *Robert Dillon* indicates that it would adopt the minority view on this issue. (ECF No. 68 at 12-14.) California law simultaneously recognizes the implied warranty of workmanship as applied to contractors, *see Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 91 (Cal. 1974), and rejects implied warranties as applied to professional services, such as those rendered by architects, engineers, surveyors, and accountants, *see Allied Properties*, 25 Cal. App. 3d at 855-56. Adopting the majority view under Nevada law would therefore not conflict with its apparent recognition of the implied warranty of good workmanship. The Court thus predicts that the Nevada Supreme Court would look to California law and adopt the majority view that design professionals, such as Design

Defendants, cannot be held liable under claims of implied warranty. Accordingly, the Court dismisses Pulver's breach of implied warranties claims against A&E and RTGA.[7]

### F. NRS Chapter 40 Claim

Lastly, Pulver appears to assert a claim for relief entitled "Meritorious Claims for Relief Against A&E Architects and Reno Tahoe Geo Associates, Inc.; NRS Chapter 40." (ECF No. 40 at 8-9.) Design Defendants argue that NRS §§ 40.600-40.695 "does 'not create a new theory upon which liability may be based'" and therefore Pulver's sixth claim for relief does not constitute a valid, separate cause of action. (ECF No. 65 at 22.) Pulver concedes that this claim for relief was "not intended to assert 'a new theory on which liability may be based'" but meant to lend clarity and satisfy the requirements of NRS § 40.6884 of filing an expert report and attorney affidavit along with the first pleading in an action against a design professional. (ECF No. 68 at 14-16.) The Court therefore considers Pulver's allegations under its "sixth claim for relief" and the accompanying expert reports and attorney affidavits (ECF Nos. 40-1, 40-2) as meeting the requirements of NRS § 40.6884, but the Court dismisses Pulver's sixth claim for relief because it does not constitute a valid cause of action.

In sum, the Court finds that Pulver fails to state a claim upon which relief may be granted as to all four claims against A&E and as to five of six claims against RTGA. Because Pulver did not request leave to amend and amendment would be futile as the challenged claims fail as a matter of law, the Court dismisses those claims with prejudice. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (holding that a court may deny leave to amend if amendment would be futile).

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

---

[7]Because Pulver agrees with Design Defendants that NRS Chapter 104 and the Universal Commercial Code are inapplicable here, the Court need not—and does not—address those arguments. (ECF No. 65 at 20-22; ECF No. 68 at 12.)

14

determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Third-Party Defendant A&E Architects, P.C.'s motion to dismiss (ECF No. 58) is granted.

It is further ordered that Third-Party Defendant A&E Architects, P.C. is dismissed from this action.

It is further ordered that Third-Party Defendant Reno Tahoe Geo Associates, Inc.'s motion to dismiss five of the six claims against it (ECF No. 65), joined by A&E Architects, P.C., is granted, as specified herein.

DATED THIS 29th Day of November 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE